IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ronald A. Isler,<br><br>    Plaintiff,<br><br>vs.<br><br>Jo Anne B. Barnhart, Commissioner of Social Security,<br><br>    Defendant. | No. CIV 04-587-TUC-JMR (GEE)<br><br>**REPORT AND RECOMMENDATION** |

    The plaintiff filed this action for review of the final decision of the Commissioner for Social Security pursuant to 42 U.S.C. § 405(g). The case was referred to the United States Magistrate Judge pursuant to the Rules of Practice of this court.

    Pending before the court is a motion for summary judgment filed by the plaintiff on March 11, 2005, and a cross-motion for summary judgment filed by the defendant on April 12, 2005. [#9, 11][1]

    The Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's motion in part and deny the defendant's cross-motion for summary judgment. The final decision of the Commissioner is not supported by substantial evidence. The medical record does not support the Commissioner's finding that Isler retained the ability to perform light work before his insured status expired.

---

[1] Clerk's record number.

PROCEDURAL HISTORY

Isler filed an application for social security disability insurance benefits alleging a disability that began on March 1, 1991, due to "headaches, photophobia, PTSD, lumbar spine with degenerative disk disease, bilateral hearing loss, tinnitus [and] gastroreflux disease." (Tr. 67-70, 111).

The Social Security Administration (SSA) denied his application initially and again upon reconsideration. (Tr. 39-48). Isler requested review and on January 26, 2004, appeared with counsel at a hearing before Administrative Law Judge (ALJ) Peter J. Baum. (Tr. 16, 51). The ALJ found Isler was not disabled. (Tr. 13-15). Isler appealed the ALJ's decision, but the Appeals Council denied review making the decision of the ALJ the final decision of the Commissioner. (Tr. 11, 5-7); 20 C.F.R. § 404.981. Isler then filed the instant complaint in U.S. District Court appealing the Commissioner's final decision. He filed the instant motion for summary judgment on March 11, 2005. The Commissioner filed the instant cross-motion for summary judgment on April 12, 2005. Isler filed a reply and response on May 12, 2005.

Claimant's Work History and Medical History

Isler was born in 1942. (Tr. 95). He graduated from college in 1974 and received a degree in business administration and finance. (Tr. 286). Isler worked as an administrator in a battery business from 1984 until 1991. (Tr. 111). Between 1991 and 1992, he worked in a water purification start-up company. (Tr. 287-88). At that job, he worked approximately 10-12 hours per week for about 14 months. (Tr. 288). Between 1994 and 2003 he worked as a life insurance salesman. (Tr. 288-89). He worked five to seven hours per week in 1994 and 1995, less in the later years. (Tr. 289). He did not earn any money selling insurance. *Id.*

Isler's medical problems began in February of 1968 when, while serving in the armed forces, he suffered a closed head injury in a helicopter crash. (Tr. 171, 266, 305-06). The accident rendered him unconscious, and he was hospitalized for approximately two weeks. (Tr. 171, 266). An examination shortly after the accident revealed "1. post traumatic syndrome manifested by photophobia, recurrent headache and generalized weakness, 2. post basilar skull

1  fracture. . . [r]ule out sensory neural loss on the right side." (Tr. 272). His injuries resulted in
2  amnesia for a 48-hour period of time surrounding the accident. (Tr. 171).

3    By December of 1968, his condition had improved, and he was functioning as a company
4  commander without significant mental difficulties. (Tr. 267). Isler completed a 13-month tour
5  of duty in Vietnam and served in a combat zone. (Tr. 168, 171). He remained on active duty
6  until 1973. (Tr. 171). He served in the reserves between 1975 and 1995 and eventually retired
7  as a colonel. (Tr. 168, 259).

8    Ever since the accident and his tour of combat duty, Isler has been experiencing back
9  pain, headaches, nightmares, hallucinations and irritability. (Tr. 259, 306, 308). These
10 symptoms occurred with increasing severity during the late 1980s and early 1990s. (Tr. 307).
11 Isler also suffered from gastroesophageal reflux disease and tinnitus during this period. (Tr.
12 309-11).

13   Isler claims his disability began on March 1, 1991. (Tr. 67-70). His date last insured
14 (DLI) was December 31, 1996. (Tr. 23). Accordingly, he must establish disability prior to this
15 date to be eligible for benefits. *Armstrong v. Commissioner of Social Security*, 160 F.3d 587,
16 589 (9th Cir. 1998). Unfortunately, there are no medical records for the period between March
17 1, 1991 and December 31, 1996. Isler was without health insurance at this time and did not
18 have the money for medical treatment. (Tr. 292-93). He probably was eligible for care through
19 the Veterans Administration during this period, but he did not know about this benefit until
20 1997 when the medical record begins again. *Id.*

21   Isler underwent an examination of his upper GI tract and esophagus in July of 1997. (Tr.
22 265). He complained of gagging and difficulty swallowing. *Id.* His physician observed a
23 "small sliding hiatal hernia" and "a few small filing defects within the proximal duodenum. .
24 . ." *Id.* After a second examination in February of 1998, his physician observed "moderate-
25 sized hiatal hernia" and "spontaneous gastroesophageal reflux." (Tr. 264).

26   In July of 1998, Isler underwent an MRI scan of the lumbosacral spine following his
27 complaints of low back pain. (Tr. 263). His physician observed "chronic facet degenerative
28

1 changes at L5-S1 and to a lesser extent at L4-5 on the left" and "mild degenerative
2 spondylolisthesis of L4 on L5." (Tr. 263).

3       In July of 1998, Isler was given a Compensation and Pension Examination. (Tr. 260).
4 The results were "1. [g]astroesophageal reflux disease. 2. [d]eviated nasal septum . . . 3. [s]tatus
5 post hemorrhoidectomy . . . 4. [t]raumatic osteoarthritis, lumbar spine, moderate 5. [h]eadaches
6 secondary to skull fracture to be evaluated by neurology." (Tr. 262). The neurological
7 examination found "1. [p]ost-traumatic headache, most likely secondary to the basilar skull
8 fracture the patient suffered in 1968 after the helicopter crash . . . 2. [t]he patient has signs of
9 possible cervical . . . pathology . . . 3. [p]robably chronic lumbar muscle strain." (Tr. 260).

10       In October of 1998, the Department of Veterans Affairs found Isler was entitled to a 10
11 percent disability entitlement based on "multiple, noncompensable, service-connected
12 disabilities." (Tr. 253). The department denied his claim for "service connected skull fracture
13 residuals" due to an absence of medical documentation. (Tr. 255-56).

14       In May of 1999, Isler was examined by David A. Weidman, M.D. (Tr. 208-09).
15 Weidman believed his headaches "are posttraumatic and are the direct result of the closed-head
16 injury occurring in February 1968. *Id.* He recommended a trial of amitriptyline or a tricyclic
17 antidepressant. *Id.* He prescribed Elavil to be taken nightly. *Id.*

18       The record documents treatment for psychological impairments between December of
19 2001 and December of 2002. (Tr. 234-50). His diagnosis was posttraumatic stress disorder and
20 organic personality disorder. (Tr. 238).

21       In October of 2002, the Department of Veterans Affairs reevaluated Isler's claim of
22 service related disability. (Tr. 102-03). The department concluded Isler's post traumatic stress
23 disorder was 30 percent disabling effective January 9, 2002. *Id.*

24       In January of 2003, the Department of Veterans Affairs reevaluated Isler's claim of
25 service related disability. (Tr. 98-101). The department concluded Isler's residual headaches
26 and photophobia constitute a 50 percent disability (an increase from the prior 30 percent
27 disabling level) effective July 24, 2002. *Id.* His degenerative disk disease is rated 10 percent
28

disabling. *Id.* His bilateral hearing loss is rated 10 percent disabling. *Id.* His intermittent tinnitus is rated at 10 percent disabling. *Id.*

The Department of Veterans Affairs concluded Isler was unable to work effective January 9, 2002. (Tr. 107).

In September of 2003, Weidman again examined Isler and wrote a summary of his condition. (Tr. 205-06). Weidman concluded Isler was "totally unemployable" due to his "transform migraine," post traumatic stress disorder, degenerative disk disease and need for psychoactive medicines. *Id.* He estimated Weidman's disability "dates back at least 8 years or sometime between when he stopped working and 1996." *Id.*

Jack A. Marks, M.D., completed a Psychiatric Review Technique form in March of 2003 for the disability determination service. (Tr. 177-90). He concluded there was insufficient evidence in the record to determine whether or not Isler had a psychological impairment between March of 1991 and December of 1996. *Id.* Accordingly, the disability determination service found Isler was not disabled through his date last insured. (Tr. 33).

In June of 2003, Hubert R. Estes, M.D., made an identical finding. (Tr. 191-204). The disability determination service again found Isler was not disabled through his date last insured. (Tr. 34).

The record contains a letter written by Isler's wife, Lucyla Isler. (Tr. 140). She writes that Isler's "headaches, food gagging and back pain became a near daily problem" in the 1990's. *Id.* In 1994, his medical condition prevented him from attending work meetings and making client appointments. *Id.* In 1995, he and his wife began taking separate cars when they went out because they never knew when Isler's headaches or gagging problems would arise. *Id.*

In September of 2003, Enoe Sferrazzo wrote a letter describing Isler's medical condition. (Tr. 141). She states Isler suffered from "severe migraine headaches, lower back pain problems and gagging problems." *Id.* In 1996, Isler's medical condition prevented him from attending Memorial Day and Labor Day family events. *Id.*

Ed Reik, a business associate, wrote a letter describing his observations of Isler's medical condition. (Tr. 142). Between 1994 and 1996, Isler's gagging problems caused him to leave

1 meetings early, cancel or reschedule meetings and even leave in the middle of a client
2 presentation. *Id.* Reik also observed Isler having difficulty sitting in or rising from a chair. *Id.*
3 In September of 2003, Bob Meluzio wrote a letter describing his observations of Isler's
4 medical condition. (Tr. 143). Meluzio describes Isler as moving with a great deal of pain from
5 his car to the house. *Id.* He also observed Isler gagging during a meal on two different
6 occasions. *Id.* Isler missed celebrating Memorial Day and Labor day for health reasons. *Id.*
7 He attended a 4th of July get-together but could not stay long due to his medical condition. *Id.*
8 In January of 2004, Isler's treating physician, Christopher J. Petro, M.D., wrote a
9 summary of Isler's condition. (Tr. 273). Petro diagnosed Isler with "organic affective disorder
10 secondary to traumatic brain injury and post traumatic stress disorder." *Id.* According to Petro,
11 Isler's symptoms worsened after he left the service which is more tolerant of PTSD symptoms
12 than most work settings. *Id.* His symptoms progressed until he was "fighting with customers
13 and blowing up at work." *Id.* He should avoid prolonged exposure to people, places and
14 crowds. *Id.* "If he returned to work, he may become a danger to others or himself." *Id.* Petro
15 concluded Isler is currently unemployable and has been so for approximately the past ten years
16 and certainly by December of 1996. *Id.*

## CLAIM EVALUATION

19 Social Security Administration (SSA) regulations require that disability claims be
20 evaluated pursuant to a five-step sequential process. 20 C.F.R. §§ 404.1520, 416.920; *Baxter
21 v. Sullivan,* 923 F.2d 1391, 1395 (9th Cir.1991). The first step requires a determination of
22 whether the claimant is engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b),
23 416.920(b). If so, then the claimant is not disabled and benefits are denied. *Id.* If the claimant
24 is not engaged in substantial gainful activity, the ALJ proceeds to step two which requires a
25 determination of whether the claimant has a "medically severe impairment or combination of
26 impairments." 20 C.F.R. §§ 404.1520(c), 416.920(c).

27 In making a determination at step two, the ALJ uses medical evidence to consider
28 whether the claimant's impairment more than minimally limits or restricts his or her "physical

or mental ability to do basic work activities." *Id*. If the ALJ concludes the impairment is not severe, the claim is denied. *Id*. Upon a finding of severity, the ALJ proceeds to step three which requires a determination of whether the impairment meets or equals one of several listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P, App.1. If the claimant's impairment meets or equals one of the listed impairments, then the claimant is presumed to be disabled, and no further inquiry is necessary. *Ramirez v Shalala,* 8 F.3d 1449, 1452 (9th Cir.1993). If the claimant's impairment does not meet or equal a listed impairment, evaluation proceeds to the next step.

The fourth step requires the ALJ to consider whether the claimant has sufficient residual functional capacity[2] (RFC) to perform past work. 20 C.F.R. §§ 404.1520(e), 416.920(e). If the ALJ concludes the claimant has sufficient RFC, then the claim is denied. *Id*. If the claimant cannot perform any past work due to a severe impairment, then the ALJ must move to the fifth step which requires consideration of the claimant's RFC to perform other substantial gainful work in the national economy in view of claimant's age, education, and work experience. 20 C.F.R. §§ 404.1520(f); 416.920(f).

In determining whether the claimant retains the ability to perform other work, the ALJ may refer to the Medical Vocational Guidelines ("the grids") promulgated by the SSA. *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576-577 (9th Cir.1988). The grids categorize jobs according to their exertional requirements such as sedentary work, light work, or medium work. *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir.1999). Based on the claimant's exertional ability, age, education, and work experience, the grids determine whether or not the claimant is disabled. *Id.* The grids are a valid basis for denying claims where they completely and accurately describe the claimant's abilities and limitations. *Id.* at 1101-02. If the claimant has significant nonexertional limitations, the grids do not apply.

---

[2] Residual functional capacity is defined as that which an individual can still do despite his limitations. 20 C.F.R. § 404.1545.

- 7 -

*Penny v. Sullivan,* 2 F.3d 953, 958-959 (9th Cir.1993). "Non[]exertional limitations are limitations that do not directly affect a claimant's strength." *Burkhart v. Bowen*, 856 F.2d 1335, 1340 (9th Cir.1988). Mental limitations are nonexertional. *Id.* at 1340-41. If significant nonexertional limitations prevent the claimant from performing the full range of work in any exertional category, the ALJ must take the testimony of a vocational expert to deny the claim. *Id.* at 1341.

The burden of proof is on the claimant at steps one through four. *Tackett v. Apfel* 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner. *Id.*

### The ALJ's Findings

The ALJ noted that Isler's date last insured (DLI) was December 31, 1996. (Tr. 23). At step one of the disability analysis, the ALJ found Isler had not engaged in any substantial gainful activity since his alleged onset date. *Id.* At step two, he found Isler had severe impairments: degenerative disk disease and degenerative joint disease of the lower lumbar spine, low back pain, headaches and tinnitus. (Tr. 24). At step three, the ALJ found Isler's impairments did not meet or equal the criteria for any impairment found in the Listing of Impairments, Appendix 1, Subpart P, of 20 C.F.R., Part 404. *Id.* At step four, the ALJ evaluated Isler's residual functional capacity. (Tr. 22-23). He concluded Isler's low back pain, tinnitus and headaches limited him to unskilled light work. *Id.* Accordingly, the ALJ concluded Isler could not return to his past relevant work which involved skilled or semi-skilled duties. *Id.* At step five, the ALJ found Isler could perform "substantially all of the full range of light work." (Tr. 23-24). By using the grids as a guideline, the ALJ concluded Isler was not disabled. *Id.*

### STANDARD OF REVIEW

An insured individual is entitled to disability insurance benefits if he or she demonstrates, through medically acceptable clinical or laboratory standards, an inability to engage in

- 8 -

1  substantial gainful activity due to a physical or mental impairment that can be expected to last
2  for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A). "[A] claimant will
3  be found disabled only if the impairment is so severe that, considering age, education, and work
4  experience, that person cannot engage in any other kind of substantial gainful work which exists
5  in the national economy." *Penny v. Sullivan,* 2 F.3d 953, 956 (9th Cir. 1993) (*quoting Marcia*
6  *v. Sullivan,* 900 F.2d 172, 174 (9th Cir. 1990)).

7  To establish a *prima facie* case of disability, the claimant must demonstrate an inability
8  to perform his or her former work. *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).
9  Once the claimant meets that burden, the Commissioner must come forward with substantial
10 evidence establishing the claimant is not disabled. *Fife v. Heckler*, 767 F.2d 1427, 1429 (9th
11 Cir. 1985).

12 The findings of the Commissioner are meant to be conclusive. 42 U.S.C. §§ 405(g),
13 1383(c)(3). The court may overturn the decision to deny benefits "only if it is not supported by
14 substantial evidence or it is based on legal error." *Matney v. Sullivan,* 981 F.2d 1016, 1019 (9th
15 Cir. 1992) (citations omitted). The Commissioner's determination that a claimant is not
16 disabled must be upheld if the Commissioner applied the proper legal standards and the record
17 as a whole contains substantial evidence to support the decision. *Clem v. Sullivan*, 894 F.2d
18 328, 330 (9th Cir. 1990) (citing *Desrosiers v. Secretary*, 846 F.2d 573, 575-76 (9th Cir.1988);
19 *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)). Substantial evidence is defined as "such
20 relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
21 *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted); *Winans v. Bowen,* 853 F.2d
22 643, 644 (9th Cir.1987). The standard is less than a "preponderance of the evidence" standard.
23 *Matney,* 981 F.2d at 1019.

24 "[I]f the evidence can support either outcome, the court may not substitute its judgment
25 for that of the ALJ." *Matney,* 981 F.2d at 1019 (citing *Richardson,* 402 U.S. at 400). When
26 applying the substantial evidence standard, however, the court should not mechanically accept
27 the Commissioner's findings but should review the record critically and thoroughly. *Day v.*
28 *Weinberger*, 522 F.2d 1154 (9th Cir.1975). Reviewing courts must consider the evidence that

supports as well as detracts from the Commissioner's conclusion. *Id*. at 1156. A denial of benefits will be set aside if the Commissioner fails to apply proper legal standards in weighing the evidence even though the findings may be supported by substantial evidence. *Frost v. Barnhart*, 314 F.3d 359, 367 (9th Cir. 2002); *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir.1978).

In evaluating evidence to determine whether a claimant is disabled, the opinion of a treating physician[3] is entitled to great weight. *Ramirez v. Shalala,* 8 F.3d 1449, 1453-54 (9th Cir.1993). The Commissioner may reject a treating physician's uncontradicted opinion only if she sets forth clear and convincing reasons for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir.1995); *Magallanes v. Bowen,* 881 F.2d 747, 751 (9th Cir. 1989). If the treating physician's opinion is contradicted by another doctor, the Commissioner may reject that opinion only if she provides specific and legitimate reasons supported by substantial evidence in the record. *Lester,* 81 F.3d at 830. No distinction is drawn "between a medical opinion as to a physical condition and a medical opinion on the ultimate issue of disability." *Rodriguez v. Bowen*, 876 F.2d 759, 761 n.7 (9th Cir.1989).

When medical reports are inconclusive, questions of credibility and resolution of conflicts in the testimony are functions solely of the Commissioner. *Magallanes,* 881 F.2d at 751 (citations omitted). The Commissioner's finding that a claimant is less than credible, however, must have some support in the record. *See Light v. Social Security Administration,* 119 F.3d 789 (9th Cir.1997).

The ALJ need not accept the claimant's subjective testimony of disability, but if he decides to reject it, "[he] must provide specific, cogent reasons for the disbelief." *Lester,* 81 F.3d at 834. "Unless there is affirmative evidence showing that the claimant is malingering, the Commissioner's reasons for rejecting the claimant's testimony must be clear and convincing."

---

[3] The term "physician" includes psychologists and other health professionals who are not medical doctors. *Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir.1995).

*Id.* "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.*

## DISCUSSION

The decision of the ALJ is not supported by substantial evidence. Medical evidence does not support the ALJ's conclusion that Isler was capable of performing light work prior to his DLI.

The Social Security Administration classifies work according to its physical exertion requirements. 20 CFR § 404.1567. Jobs are classified as sedentary, light, medium, heavy, or very heavy. *Id.* Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 CFR § 404.1567(b). "[T]he full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10. "Sitting may occur intermittently during the remaining time." *Id.*

In this case, the ALJ found that, although Isler suffered from low back pain, he could still perform light work. (Tr. 22-23). The record, however, does not support this conclusion. There is no medical source that quantifies the effect of Isler's degenerative disk disease on his ability to perform work related tasks such as lifting, walking, standing, pushing and pulling. The ratings from the Veterans Administration arguably support a conclusion that Isler could perform some type of work, but they do not quantify Isler's capacity for physical exertion or work related tasks. *See also McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) ("[A]n ALJ must ordinarily give great weight to a VA determination of disability."). Isler's past relevant work as an administrator at a car battery business appears to be, at most, sedentary work. (Tr. 111). The ALJ does not explain why he believes Isler can perform at a higher level. Substantial evidence does not support the ALJ's finding that Isler can perform light work. *See, e.g, Dixon*

*v. Barnhart*, 324 F.3d 997, 1002 (8th Cir. 2003) ("There is nothing in the record to support the conclusion that because Dixon can perform certain daily life activities, he can also perform the exertional tasks of medium work."); *LaPorta v. Bowen*, 737 F.Supp. 180, 183 (N.D.N.Y.,1990) (Remand was required where the ALJ did not provide substantial evidence that the claimant could perform each of the requirements of light work.). Accordingly, the ALJ's finding at step five that Isler is not disabled is not supported by substantial evidence.

On remand the ALJ should reevaluate Isler's RFC paying particular attention to those medical records that described Isler's condition *after* his DLI. A number of sources document Isler's inability to work at some point after his DLI. Medical reports describing the claimant's medical condition after the expiration of the claimant's insured status are relevant to establishing the claimant's condition prior to his DLI. *Lester v. Chater*, 81 F.3d 821,832 (9th Cir. 1995); *Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988). This is particularly true where the claimant alleges a mental impairment such as PTSD that develops over a period of time. *See Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991); *Jones v. Chater*, 65 F.3d 102, 104-04 (8th Cir. 1995). Where, as here, the bulk of the medical record describes the claimant's condition after his DLI, the ALJ should first determine the question of disability (at a time after his DLI) and then address the question of onset date pursuant to SSR 83-20. *See, e.g., Quarles v. Barnhart*, 178 F.Supp.2d 1089, 1095-99 (N.D. Cal. 2001).

RECOMMENDATION

For the foregoing reasons, the Magistrate Judge recommends that the District Court, after its independent review, grant the plaintiff's Motion for Summary Judgment in part [#9], deny the defendant's Motion for Summary Judgment [#11], and enter an order remanding the plaintiff's claim for further proceedings.

Pursuant to 28 U.S.C. § 636(b), any party may file and serve written objections within 10 days after being served with a copy of this Report and Recommendation. If objections are not timely filed, the party's right to de novo review may be waived. *See United States v. Reyna-*

1  *Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc), *cert. denied*, 540 U.S. 900 (2003). If
2  objections are filed, the parties should direct them to the District Court by using the following
3  case number: CIV 04-587-TUC-JMR.
4      The Clerk of the Court is directed to send a copy of this Report and Recommendation
5  to all parties.
6      DATED this 19th day of October, 2005.

/s/ Glenda E. Edmonds
Glenda E. Edmonds
United States Magistrate Judge

- 13 -